ALDEN NURSING CENTER OF POPLAR CREEK, INC., Plaintiff-Appellant, v. MEDITRUST OF ILLINOIS, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—92—0966

Opinion filed June 30, 1993.

Janet L. Hermann, of Greenburg & Hermann, of Chicago, for appellant.

John F. Zabriskie, of Hopkins & Sutter, of Chicago, and Daniel J. Gleason and John M. Griffin, both of Nutter, McClennen & Fish, of Boston, Massachusetts, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Alden Nursing Center of Poplar Creek (Alden), brought a declaratory action to determine the rights and liabilities of the parties regarding certain provisions of a lease agreement between the parties. The trial court granted summary judgment in favor of defendant, Meditrust of Illinois, Inc. (Meditrust). On appeal, Alden asserts that the trial court erred in granting summary judgment because Alden is not obligated to pay (1) greater financing costs associated with refinancing than the original financing arrangements, which provided only for variable costs due to varying interest rates and bond costs; and (2) attorney fees associated with refinancing the bonds because the lease does not provide for such payment. In addition, Alden asserts that the trial court erred in denying its request for an evidentiary hearing on the issue of reasonableness and necessity of the attorney fees claims. We affirm in part and reverse and remand in part.

Alden operated a nursing center on premises leased from Meditrust. In January 1988, a three-part transaction closed between Alden, Meditrust, and a nonparty to this action, Midwest Cambridge, Inc. (Midwest). Under the transaction, which was memorialized in an agreement for purchase and sale and for lease, Meditrust bought a nursing home from Midwest and simultaneously leased it to Alden pursuant to a lease and security agreement executed at the closing. Meditrust made a $2 million cash payment and assumed Midwest's

obligations relating to the existing tax-exempt bond financing on the facility. Meditrust assumed $6.8 million variable rate, tax-exempt revenue bonds (bonds) with the Illinois Health Facilities Authority. The bonds were supported with a $6.8 million letter of credit.

The lease agreement provides that Alden will pay as part of its minimum rent:

"3.1 (a) *Minimum Rent*:

\* \* \*

(iii) An amount equal to the monthly sum of all principal, interest and other payments of any kind payable in connection with any Assumed Indebtedness \* \* \*. Such amount may vary from month to month, owing to the variable rate of interest on the Bonds as well as the varying periodicities for payment of Bond-related costs, fees and expenses."

The lease agreement defines assumed indebtedness as follows:

"2.1 *Assumed Indebtedness*: [Defined] Any indebtedness or other obligations existing at the time of acquisition of the Leased Property by Lessor secured by a mortgage, deed of trust or other security agreement in or on the Leased Property and taken subject to or assumed by Lessor pursuant to the terms of the Purchase and Sale Agreement, and any indebtedness resulting from the refinancing thereof (which refinancing shall not (i) result in the financing costs to the Lessee related thereto being greater than the costs associated with the financing arrangement being replaced, or (ii) be on terms materially more burdensome to the Lessee than those associated with the financing arrangement being replaced) and/or any subsequent indebtedness resulting from Lessor's financing of, or Lessor's reimbursement of Lessee's financing of any Capital Additions during the Term, but specifically excluding any indebtedness or other obligations of Lessee not assumed by Lessor prior to or during the Term."

Initial security for the $6.8 million bonds assumed by Meditrust was provided by a five-year letter of credit issued by National Westminster Bank USA (Natwest) in which Natwest agreed to honor the purchase price of the tendered bonds and the draws by the trustee to pay the bonds' interest and principal as they became due. Meditrust was required to reimburse Natwest for any draws made against the letter of credit account.

The purchase, sale and lease agreement was executed by Midwest, Alden, and Meditrust at the same time that the lease and se-

curity agreement was signed. It was understood by all parties that if the letter of credit lapsed, the bonds had to be redeemed immediately. Section 2.14 of the purchase, sale and lease agreement provided in part:

> "The Buyer [Meditrust] shall assume the Bonds and shall take title to the Premises subject to and shall assume the outstanding balance, as of the Closing Date, of the Bond Mortgage Note and the Bond Mortgage ***. All carrying costs, fees, expenses relating to the Bonds, including but not limited to payments of principal of and interest on the Bonds, trustee fees, letter of credit fees and remarketing agent fees shall be paid by the Lessee as a component of the rent payable under the Lease."

The five-year letter of credit was due to expire on January 15, 1990, by which time it had to be either renewed or replaced. If not, the bonds would be immediately redeemed. Natwest refused to renew its letter of credit. To prevent the bonds from being redeemed, Meditrust obtained an alternative letter of credit from Barclays Bank PLC. The closing costs totaled $169,199. Due to timing problems, it was also necessary to get two emergency temporary extensions of the Natwest letter of credit, which cost $116,116.22.

In June 1990, Meditrust sought reimbursement from Alden for the incurred costs and fees of $288,715.22 associated with obtaining the extensions and new letter of credit. Under protest, Alden paid a portion of those fees and costs. Then, without Alden's consent, Meditrust removed $105,386.02 from an escrow account under a renovation and closing expense escrow agreement entered into between the parties at the time the lease agreement was made. Meditrust then demanded that Alden pay the remaining amount of $70,742.98.

Denying that it had any obligation under the lease agreement to pay those expenses, Alden filed a declaratory action in March 1990. On January 3, 1991, Meditrust filed a motion for summary judgment arguing that Alden agreed to pay all costs associated with the bond financing. Alden filed a cross-motion for summary judgment. After a hearing on May 23, 1991, the trial court entered summary judgment in favor of Meditrust and denied Alden's cross-motion for summary judgment.

On appeal, Alden's argument is as follows. Alden asserts that the new letter of credit was a refinancing for which it is not obligated to pay the associated extraordinary fees and costs. Alden contends that the bonds and letter of credit securing the bonds are

inextricably linked, forming the assumed indebtedness, which was refinanced. The lease agreement provides that it is not liable for refinancing costs that are greater than those associated with the original financing arrangements or that are materially more burdensome. Instead, it is required to pay as minimum rent the usual and ordinary costs, fees, and expenses, including variations due to variable rate of bond interest and varying periodicities for related costs, fees, and expenses. Alden argues that the lease reflects an intention of the parties to keep the costs relatively constant, limited to varying periodicities, not extraordinary costs associated with refinancing the assumed indebtedness.

Meditrust responds that the refinancing limitations in the lease were not triggered because no refinancing took place. Instead, Meditrust contends that the bonds were the financing and the letter of credit is the security for the bonds. Meditrust asserts that Alden is responsible for all costs associated with the bond financing because it agreed to pay all principal, interest, and other payment in connection with any assumed indebtedness, which is the existing financing that Meditrust assumed when it acquired the nursing home. Meditrust maintains that Alden's responsibility includes all costs of maintaining the letter of credit, which is a separate and distinct financial document that was extended, then replaced. We agree.

Summary judgment should be granted only if the pleadings, admissions, depositions, and affidavits reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Neofotistos v. Metrick Electric Co.* (1991), 217 Ill. App. 3d 506, 577 N.E.2d 511.) Where facts are not in dispute, and the only issue raised is the construction of contract language, summary judgment is properly employed to resolve that issue. *Peters & Fulk Realtors, Inc. v. Shah* (1986), 140 Ill. App. 3d 301, 305, 488 N.E.2d 635.

■ A court must consider the contract in the context of the entire agreement. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683; *Wilson v. Wilson* (1991), 217 Ill. App. 3d 844, 850, 577 N.E.2d 1323.) The determinative factor is the intention of the parties, which can best be determined by considering the contract as a whole, reviewing each part in light of the others. (*Wilson*, 217 Ill. App. 3d at 850; *Boatmen's National Bank v. Smith* (7th Cir. 1987), 835 F.2d 1200, 1203.) Where there is no ambiguity, the contract language alone establishes the intention of the parties. *S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 377 N.E.2d 73.

■ We hold that the agreement is unambiguous. It is clear that the purchase of the nursing home by Meditrust was financed by bonds and that the bonds are the assumed indebtedness as defined in section 2.1 of the lease agreement. The bonds were secured by a letter of credit which was to expire in 1990. Alden should have been aware that the letter of credit had to be replaced or renewed in 1990. Renewal of the letter of credit, however, did not constitute a refinancing of the debt itself. Therefore, since the bonds were not refinanced, the refinancing clause limiting costs is not applicable.

We also hold that the terms of the purchase, sale and lease agreement are binding on Alden, the lessee under both agreements. It is clear under section 2.14 of that agreement that Alden agreed to pay, as a component of the rent payable under the lease, all letter of credit fees. Alden is obligated to pay the costs of replacing the letter of credit. Pursuant to the lease agreement, Alden is responsible for all bond-related costs, which includes the letter of credit. Thus, we affirm the summary judgment in favor of Meditrust.

The last two arguments involve attorney fees. Alden asserts that it is not obligated to pay the $141,795 attorney fees incurred in the acquisition of the extensions and new letter of credit because the lease does not provide for such fees. In addition, Alden contends that the attorney fees were improperly granted without any hearing on the fees' necessity or reasonableness.

Meditrust responds that Alden is responsible for all transactional attorney fees, as distinguished from litigation attorney fees, because the lease provides that Alden is to pay all bond-related fees. Meditrust contends that this provision includes all attorney fees actually incurred.

We hold that Alden is responsible for any reasonable attorney fees incurred in obtaining the extension and new letter of credit. (*Hanover Insurance Co. v. Smith* (1989), 182 Ill. App. 3d 793, 538 N.E.2d 710.) Where the attorney fees are transactional, they are *prima facie* reasonable. We further hold that the party opposing the fees has the burden of proving their unreasonableness. Thus, we reverse the trial court's ruling on attorney fees and remand this cause for a hearing on the reasonableness of the transactional attorney fees. The burden is on Alden to prove their unreasonableness.

Based on the foregoing, we affirm in part and reverse and remand in part. We affirm the circuit court's ruling that Alden is responsible for all the fees, costs, and expenses related to the extension and new letter of credit. We reverse the circuit court's ruling

on attorney fees and remand this cause for a hearing on the reasonableness of the transactional attorney fees. The hearing is to be conducted in accordance with this opinion.

Affirmed in part; reversed and remanded in part.

TULLY, P.J., and RIZZI, J., concur.