NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2018
Decided February 6, 2018

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2250

| | |
|---|---|
| EDWIN ROJAS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 16 C 7283 |
| X MOTORSPORT, INC., | |
| *Defendant-Appellee.* | Gary Feinerman, *Judge.* |

**O R D E R**

Edwin Rojas asserts claims against X Motorsport, a car dealership, for violations of the Truth in Lending Act, 15 U.S.C. § 1601, in connection with a financed sale. He argues that the disclosed terms of financing were not "meaningful" because they did not state that the sale depended on approval from a financier. The parties cross-moved for summary judgment, and the district court granted the defendant's motion. Because another agreement that Rojas signed stated the sale was conditioned on approved financing, we affirm.

Rojas visited the X Motorsport store in 2016 to purchase a used car. He signed a buyer's order and a retail installment sale contract. The buyer's order lists a purchase price of $29,142.67, and it also voids Rojas's obligation to purchase the car if the installment contract, which is explicitly referenced, is not financed. A boxed area on the first page of the installment contract displays the "Federal Truth-in-Lending Disclosures." These include the interest rate, the finance charge, the amount financed and the payments from financing, and the total sales price after the down payment and financing. The dealership submitted a financing application to Capital One. Rojas also signed an agreement that allowed him to drive the car off the lot that same day.

On his drive home Rojas called X Motorsport because he heard "weird" noises emanating from the car. He was told to bring the car back for repairs. After multiple (failed) attempts to schedule a mechanical inspection, X Motorsport's finance manager offered to cancel the contract and refund Rojas's down payment in exchange for the return of the car. Rojas agreed, stating, "Yeah, let me just get my money back. Let's rip up this contract and I'll give you your car back[.]"

Rojas returned to the dealership, though without the car, on January 23, 2016, to void the contract and retrieve his down payment. The owner of X Motorsport told Rojas that he could not refund his money until he saw the vehicle. The owner also told Rojas that he would refund the money by check, rather than by cash. Dissatisfied, Rojas began to leave the dealership, at which point the finance manager told him that Capital One had declined to finance the car. Until then, Rojas did not know that Capital One had not approved his application for financing.

Rojas kept the vehicle for nearly two weeks after the January 23 incident. He eventually returned the car, and he received and accepted a check for his down payment. Rojas then sued for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601. He accused the defendant of using "illusory and meaningless credit disclosures" in its installment contract because the terms were conditioned upon financing. The district judge, following *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765 (7th Cir. 2000), entered summary judgment for the defendant. He observed that the installment contract truthfully disclosed Rojas's obligations if financing were secured, and the buyer's order stated the financing contingency. The judge ruled that under *Janikowski* "the presence in the contract of a condition subsequent that might later nullify those obligations does not make those disclosures untrue or improper under TILA."

The district court's ruling was correct. TILA was enacted "to assure a meaningful disclosure of credit terms" so that a potential purchaser can have the information necessary to shop for credit. 15 U.S.C. § 1601(a); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, 528 (7th Cir. 2007). To achieve this purpose of "meaningful" disclosure, creditors must state clearly and accurately material terms relevant to the transaction, including the annual percentage rate of interest, the finance charge, the amount financed, the total of payments, and the total sale price. 15 U.S.C. § 1638(a); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Rojas received all of the mandated financing information. The installment contract disclosed the interest rate, finance charge, and amount financed in a boxed section on the front page. And Rojas has not presented any evidence showing that the information was inaccurate.

Rojas responds by fixating on the financing condition. He argues that the TILA disclosures should have been labeled "estimates" because they depended on a condition subsequent—financing. But we rejected this argument in *Janikowski*. There, we held that a condition subsequent, such as securing financing, does not render TILA disclosures inaccurate or mere "estimates"; if the condition occurs, the disclosures provide the "set rate" for that agreement. *Janikowski*, 210 F.3d at 767–68. This holding is consistent with TILA itself. TILA states that if information disclosed "is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of … [TILA]." 15 U.S.C. § 1634; *see* 12 C.F.R. § 226.17(e). Because the financing condition did not undermine the accuracy of the disclosures Rojas received, X Motorsport did not violate TILA.

Rojas unsuccessfully attempts to distinguish his case from *Janikowski* by arguing that this court addressed only whether disclosures in conditional contracts were "adequate," not whether they were "meaningful." To support his argument, Rojas relies on two district court decisions from another circuit: *Salvagne v. Fairfield Ford, Inc.*, 794 F. Supp. 2d 826, 832 (S.D. Ohio 2010), and *Patton v. Jeff Wyler Eastgate, Inc.*, 608 F. Supp. 2d 907, 915 (S.D. Ohio 2007). In both cases the courts ruled that TILA disclosures in an installment contract were meaningless because the separate purchase agreement added a condition of third-party financing that was not contained in the installment contract. Both courts—applying principles of Ohio contract law—declined to read the two agreements together, and explicitly refused to follow *Janikowski*. *Salvagne*, 794 F. Supp. 2d at 833; *Patton*, 608 F. Supp. 2d at 914–15.

These decisions do not apply here. Rojas's case is governed by Illinois law, which "mandates that when 'different instruments are executed together as part of one transaction or agreement, they are to be read together and construed as constituting but a single instrument.'" *IFC Credit Corp. v. Burton Indus., Inc.*, 536 F.3d 610, 614 (7th Cir. 2008) (quoting *McDonald's Corp. v. Butler Co.*, 511 N.E.2d 912, 917 (Ill. App. Ct. 1987)); *see also Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) ("[I]nstruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together."). And if a contract incorporates another document by reference, the "additional provisions become as much a part of the contract as if they were expressly written in it." *Westlake Fin. Grp., Inc. v. CDH-Delnor Health System*, 25 N.E.3d 1166, 1172 (Ill. App. Ct. 2015) (quoting *Wilson v. Wilson*, 577 N.E.2d 1323, 1329 (Ill. App. Ct. 1991)).

These principles of Illinois law defeat Rojas's argument. He concedes that he signed the buyer's order and installment contract as part of the same transaction. Moreover, the buyer's order explicitly incorporates any retail installment sale contract and specifies that the agreement will not remain binding if a third party finance source does not agree to purchase the installment contract. Thus, under Illinois law, we must construe the documents together.

Rojas replies that that the agreements conflict, and therefore should not be read together, because one refers to the financing condition and the other does not. But the agreements do not contradict each other; one simply adds a condition that the other does not forbid. *See Tepfer v. Deerfield Sav. & Loan Ass'n*, 454 N.E.2d 676, 679 (Ill. App. Ct. 1983) (construing documents together when "there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another"); *IFC Credit Corp.*, 536 F.3d at 615 (reading contracts together even though unconditional obligation in one was subject to condition precedent in another); *see also Janikowski*, 210 F.3d at 768 (reading the purchase order, containing the financing condition, with the installment contract as one agreement). When the two consistent documents are read together, the disclosures in the installment contract comply with TILA.

AFFIRMED