531 N.W.2d 99 (1995)
In the Matter of the ESTATE OF Paul A. KOKJOHN, Deceased.
Frank KOKJOHN, Jr., Richard Kokjohn, Agnes Moline, Larry Moline, and Dale Moline, Beneficiaries, Appellants,
v.
Marguerite HARRINGTON, Beneficiary, Appellee,
Fort Madison Bank & Trust Co., Executor.
No. 93-1858.
Supreme Court of Iowa.
April 26, 1995.
Gregory A. Johnson of Johnson & Skewes, Fort Madison, for appellants.
Robert A. Engberg and Brian J. Helling of Aspelmeier, Fisch, Power, Warner & Engberg, Burlington, for appellee.
Gary L. Hoyer of Saunders, Humphrey, Johnson & Hoyer, Fort Madison, for executor.
Considered en banc.
PER CURIAM.
The beneficiaries of decedent's will challenge a declaratory ruling finding a golden passbook account was not part of decedent's estate because it was held in joint tenancy by *100 the decedent, Paul A. Kokjohn, and his sister, Marguerite Harrington. They contend: (1) the "time deposit, open account agreement" is not incorporated by reference on the signature card; (2) the parol evidence rule does not apply to exclude consideration of evidence extrinsic to the signature card and the "time deposit, open account agreement"; (3) decedent did not intend to create a joint tenancy account; and (4) if there was a contract, it is void due to mistake. We affirm.

I. Background.

On July 29, 1969, Paul A. Kokjohn opened a golden passbook account at the Fort Madison Bank & Trust Company. He and his sister, Bernice M. Moline, signed the signature card, which provided in part:
The undersigned and FORT MADISON BANK & TRUST COMPANY, Fort Madison, Iowa agree that the terms and conditions of the Time Deposit, Open Account Agreement as set forth in the passbook accompanying this account shall apply.
The time deposit, open account agreement provided in relevant part:
9. The balance in this account, if it be in two names, shall be owned by the depositors as joint tenants, and the balance in this account may then be paid to any one of such tenants or to the survivor.
The parties presented no direct evidence indicating Paul and Bernice received a passbook at the time they signed the signature card. However, an employee of the bank testified the bank's practice was to fill out the passbook and give it to the depositors after they signed the signature card. The passbook itself was not signed.
Bernice died in November 1977. Shortly thereafter, Bernice's name was crossed out on the signature card and Marguerite's name was added. At about the same time, Paul executed a will purporting to make any bank accounts held in joint tenancy part of his estate and claiming he held these accounts in joint tenancy for convenience only. The pertinent language of this testamentary disposition was as follows:
Any bank account or certificates of deposit which I might have in joint ownership with any other person shall be a part of my estate to be distributed in shares as above set out [distribution of estate to be equally divided between surviving siblings and heirs of deceased siblings] said joint ownership having been created by me for purposes of convenience only in case of my incapacity.
Paul died testate on June 30, 1992, leaving no surviving spouse. At the time of Paul's death the golden passbook account had a principal and accrued interest balance of $94,090.27. The executor of his estate filed this declaratory judgment action asking whether Paul's will could void the joint tenancy designation on three bank accounts, including the above-described golden passbook account. Only the golden passbook account's status is at issue in this appeal.
The district court concluded the golden passbook account's signature card and time deposit, open account agreement created a joint tenancy account. It also concluded Paul's death terminated his interest in the account. Consequently, the account could not be affected by Paul's will. It rejected the argument that the agreement was void due to mistake. The beneficiaries (all but Marguerite) now appeal.

II. The Doctrine of Incorporation by Reference.

We have not specifically addressed what is required for a contract to incorporate an extrinsic document by reference or how the incorporating contract should be interpreted. The Iowa cases that mention the doctrine of incorporation by reference in the context of general contract law do so without comment. See, e.g., Porter v. Iowa Power & Light Co., 217 N.W.2d 221, 228 (Iowa 1974) (court agreed trial court properly considered portions of contract incorporated by reference); Jefferson County v. Barton-Douglas Contractors, 282 N.W.2d 155, 157 (Iowa 1979) (court discussed construction contract incorporating by reference industry arbitration rules). We have discussed this doctrine, however, in the context of testamentary dispositions. *101 See In re Estate of Safley, 193 N.W.2d 118, 120 (Iowa 1971).
Other jurisdictions have considered the doctrine of incorporation by reference outside of the testamentary context. See International Graphics, Inc. v. Bryant, 252 Ark. 1297, 482 S.W.2d 820, 821 (1972) ("Where a written contract refers to another instrument and makes the terms and conditions of such instrument a part of it, the two will be construed together as the agreement of the parties."); Batter Bldg. Materials Co. v. Kirschner, 142 Conn. 1, 110 A.2d 464, 468 (1954) ("Where ... the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties."); OBS Co. v. Pace Constr. Corp., 558 So.2d 404, 406 (Fla.1990) ("It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."); Wilson v. Wilson, 217 Ill.App.3d 844, 160 Ill.Dec. 752, 577 N.E.2d 1323, 1329 (1991) ("For a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract."); Garrett v. State Farm Mut. Ins. Co., 112 Or.App. 539, 829 P.2d 713, 716 (1992) ("When a written contract refers in specific terms to another writing, the other writing is part of the contract."). The common thread throughout these cases is a requirement that the reference be clear and specific. We now adopt such a requirement.
We believe the signature card's reference to the open account agreement in this case is sufficiently clear and specific to allow incorporation of the latter agreement into the depositor's agreement of Paul and Bernice on July 29, 1969. In reaching this conclusion, we find from the evidence that the open account agreement that contains the language establishing the joint tenancy was delivered to the depositors contemporaneously with the signing of the signature cards. We have recognized that, when a deposit is evidenced by a bank book, delivery of the book to either depositor is sufficient to finalize the agreement. In re Estate of Martin, 261 Iowa 630, 155 N.W.2d 401, 405 (1968).
Our inquiry does not end at this point. The question before us concerns the nature of the depositor's agreement with Marguerite when her name was added to the signature card in November 1977. At this time, Paul was sole owner of the account as surviving joint tenant under the agreement with Bernice. Paul did not execute a new depositor's agreement when Marguerite's name was added to the signature card. It is clear from the evidence, however, that he initiated and gave consent to Marguerite acquiring signature card status, whatever that status was intended to be. The situation presented is thus similar to that before us in Martin. In that case, we held that the oral direction to a bank by the sole owner of a certificate of deposit to reissue the certificate in the name of W.F. Martin (the owner) or Isal Barber (the owner's sister) created a joint tenancy interest in the owner's sister.

III. Evidence of Marguerite's Interest in the Savings Account.

Evidence concerning the nature of Marguerite's relationship to the golden passbook account consists of the following: (1) the bank signature card on which her signature was added at Paul's direction and with his consent incorporates a joint tenancy agreement as to those persons signing the signature card; (2) Marguerite's testimony at the hearing that her interest in the account was an ownership interest, although the proceeds were to be available for Paul's expenses during his lifetime; and (3) a recital in Paul's will that the account was held in "joint ownership." The district court believed that this case could be decided on the basis of the signature card and open account agreement and that extrinsic evidence should not be allowed. Extrinsic evidence was presented subject to objection.
We share appellants' view that the issue of the ownership interest that resulted following Marguerite's name being added to the signature card is sufficiently equivocal that it is appropriate to consider extrinsic evidence *102 concerning the intent of the parties. As we recognized in Petersen v. Carstensen, 249 N.W.2d 622 (Iowa 1977),
[e]xtrinsic evidence is admissible as an aid to ascertaining the intention of parties to a contract when it sheds light on the situation of the parties, antecedent negotiations, and the objects they were striving to attain....
The resulting rule is that a bank deposit in the name of alternate payees becomes the property of the surviving payee upon the depositor's death in the absence of extrinsic evidence showing that the depositor had a contrary intention.
Id. at 625.
In considering all of the evidence presented, including the extrinsic evidence, we reach the same view as the district court concerning the establishment of a joint tenancy account. Perhaps the strongest extrinsic evidence concerning the nature of the interest created by the depositor's agreement is the recital in Paul's will that the account was held in "joint ownership." Although it appeared to be his belief that he could undo this joint ownership by testamentary disposition, that course of action was not available to him. Property held in joint tenancy is not devisable by will. In re Estate of Kiel, 357 N.W.2d 628, 631 (Iowa 1984); Hyland v. Standiford, 253 Iowa 294, 303, 111 N.W.2d 260, 266 (1961). Once it is determined that Paul acquiesced in establishing joint ownership in the account, the only issue remaining is the nature of that joint ownership.
Our cases recognize that, when joint ownership is created in a bank deposit, the presumption of tenancy in common that would otherwise exist is converted to a presumption in favor of joint tenancy. Petersen, 249 N.W.2d at 625; McCuen v. Hartsock, 159 N.W.2d 455, 459 (Iowa 1968). Appellants' argument throughout has been that Marguerite held no ownership interest in the account. They have not advanced any legal theory or presented any evidence that would suggest that, if joint ownership exists, it is other than the presumed ownership interest of joint tenancy with right of survivorship.

IV. Mistake.

As found by the trial court, any mistake that may have occurred related to the legal consequences of incorporating by reference the open account agreement into the contract created by the signature card. A mistake as to the legal consequences of known facts cannot serve as a basis for equitable relief. Bakke v. Bakke, 242 Iowa 612, 618, 47 N.W.2d 813, 816-17 (1951). The trial court correctly found the beneficiaries may not rely upon this mistake as a basis for considering evidence extrinsic to the contract or voiding the contract. See also Burns v. Nemo, 252 Iowa 306, 315, 105 N.W.2d 217, 222 (1960) (mistake relating to establishment of bank accounts only occurs if signature obtained surreptitiously or if physical or mental condition prevented comprehension of contract).
We have considered all issues presented, and for the reasons given, conclude that the judgment of the district court should be affirmed.
AFFIRMED.