FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

October 15, 2020

Blaine F. Bates
Clerk

NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY APPELLATE PANEI
# OF THE TENTH CIRCUIT

_____

IN RE TWIFORD ENTERPRISES, INC.,

Debtor.

_____

TWIFORD ENTERPRISES, INC.,

Appellant,

v.

ROLLING HILLS BANK AND TRUST,

Appellee.

BAP No. WY-19-037

Bankr. No. 18-20120
Chapter 11

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Wyoming

_____

Submitted on the briefs.**

_____

Before **SOMERS**, **JACOBVITZ**, and **LOYD**, Bankruptcy Judges.

_____

**LOYD**, Bankruptcy Judge.

_____

* This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

** The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b). The case is therefore ordered submitted without oral argument.

_____

Corporate bankruptcy cases often take many forms. Some cases involve complex litigation and numerous parties. Other cases can essentially be boiled down to a two-party dispute. The appeal before us falls into the latter category. The debtor filed a bankruptcy petition in the United States Bankruptcy Court for the District of Wyoming after its largest secured creditor refused to renegotiate credit terms. The secured creditor sought postpetition interest, attorneys' fees, and costs pursuant to 11 U.S.C. § 506(b) based on the equity in the collateral.[1] The Bankruptcy Court, finding a valid contract allowing for interest and attorneys' fees, awarded postpetition interest and the majority of the requested attorneys' fees and costs. We affirm the Bankruptcy Court's award of postpetition interest, attorneys' fees, and costs.

## I. Factual Background

Twiford Enterprises, Inc. (the "Debtor") owns and operates a cattle ranch in Glendo, Wyoming. The ranching operation consists of approximately 2,870 acres and 1,400 head of cattle. Jack and Stanetta Twiford serve as the Debtor's president and vice president, respectively. The Twiford family has controlled the ranchland since homesteading in 1878. In recent years, the Debtor financed the ranching operations through five loans made by Rolling Hills Bank and Trust (the "Bank"). The Debtor secured the loans with both real and personal property, including cattle. The Debtor indicates that even though the loans were current, disputes concerning the calculation of

_____

[1] All future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code.

variable interest rates and the refusal to extend maturity dates caused it to seek

bankruptcy protection in the face of a replevin action and foreclosure proceedings filed in

Wyoming state court.

The Debtor filed a chapter 11 petition on March 7, 2018. The Bank filed a proof of

claim ("Claim 8") based on five promissory notes totaling $5,797,103.29.[2] The Debtor

objected to Claim 8, arguing the 18 percent default interest rate under the promissory

notes constituted an impermissible penalty and the Bank failed to include documentation

in support of its calculation of attorneys' fees.[3] The Debtor supplemented its objection to

Claim 8, providing additional history related to the loan negotiation process and arguing

the terms of variable rate notes rendered it impossible to calculate the pre-default interest

rate on the loans.[4] The Bankruptcy Court conducted a telephonic evidentiary hearing on

the Debtor's claim objection at which it overruled the objection to Claim 8 for reasons

stated on the record.[5] The Debtor did not appeal the order overruling the objection.

The Bank then filed a motion to allow postpetition interest, attorneys' fees, and

costs to be included in its claim pursuant to § 506(b) (the "Motion").[6] The Bank argued it

was entitled to postpetition interest, attorneys' fees, and costs under § 506(b) because it is

an oversecured creditor. The Bank's claim of $5,797,103.29 is secured by real property

valued by the Debtor at $4,650,000 and personal property valued by the Debtor at

---

[2]     *Proof of Claim*, *in* Appellant's App. at 3.
[3]     *Debtor-in-Possession's Objection to Claim No. 8*, *in* Appellant's App. at 153.
[4]     *Supplement to Objection to Claim No. 8*, *in* Appellant's App. at 355.
[5]     *Minutes of Proceeding*, *in* Appellee's App. at 1.
[6]     *Rolling Hills Bank & Tr.'s Motion to Allow Claim for Post-Petition Interest, Fees & Costs Pursuant to 11 U.S.C. § 506(b)*, *in* Appellant's App. at 186.

$3,141,243, for a combined value of $7,791,243. The Bankruptcy Court's previous valuation of the assets securing the Bank's claim at $7,793,332 suggests there is an equity cushion of approximately $2,000,000. Accordingly, the Bank sought postpetition interest between the petition date of March 7, 2018 to May 15, 2019, in the amount of $377,097.31 plus per diem interest of $900.00 per day after May 15, 2019. The Bank also sought postpetition attorneys' fees and costs totaling $304,142.29.

The Debtor objected to the Bank's Motion, arguing it is impossible to verify the Bank's calculation of pre-default interest under the Variable Rate Notes because one cannot determine the applicable interest rate and the interest rate change date for those notes.[7] Three of the promissory notes evidencing Claim 8 feature variable interest rates (the "Variable Rate Notes") that are tied to an index called Rolling Hills Bank & Trust Base Rate 2010 (the "Index"). The Index is an internal rate index maintained by the Bank. The Variable Rate Notes are summarized as follows.

| Loan Number | Origination Date | Principal Amount | Interest Rate |
|---|---|---|---|
| xxxx1120 | 12/17/2014 | $1,080,377.79 | Index Rate – 2.35% |
| xxxx1230 | 06/03/2015 | $1,075,367.77 | Index Rate – 1.85% |
| xxxx1580 | 03/13/2017 | $500,000.00 | Index Rate – 1.85% |

The Variable Rate Notes state the interest rates will change one day after the origination dates, and then may change as often as daily.

---

[7] *Objection to Rolling Hills Bank & Tr.'s § 506(b) Claim*, *in* Appellant's App. at 348.

The Debtor also objected to the attorneys' fees and costs because the fees and costs were unreasonable, were based on overzealous representation, contained improper time entries, included fees for duplicative work, resulted from over-lawyering, and the hourly billing rates were excessive.[8]

The Bankruptcy Court conducted a hearing on the Motion and the Debtor's objection thereto on July 19, 2019.[9] The Bankruptcy Court entered its order granting the Motion on September 26, 2019 (the "Order").[10] The Order approved the Bank's request for postpetition interest, concluding the interest rates are ascertainable from the Index, which is incorporated in the Variable Rate Notes by reference. The Bankruptcy Court awarded postpetition interest of $377,097.31 and found interest continued to accrue at $900 per day. The Bankruptcy Court also awarded the Bank $205,281.50 in attorneys' fees, reducing the requested amount by $58,180.50 after finding charges for overzealous representation and billing entries for "not charged" items. Finally, the Bankruptcy Court

---

[8] *Id.*, *in* Appellant's App. at 348.
[9] A transcript of that hearing is not included in the appellate record.
[10] *Order Approving Rolling Hills Bank & Trust's Motion to Allow Claim for Post-Petition Interest, Fees & Costs Pursuant to 11 U.S.C. § 506(b)*, *in* Appellant's App. at 394.

awarded costs of $7,910.97 and expert witness fees and costs of $30,801.82. The Debtor

filed a timely notice of appeal of the Order on October 10, 2019.[11]

## II.    Jurisdiction & Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed

appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth

Circuit."[12] Neither party elected to have this appeal heard by the United States District

Court for the District of Wyoming; thus, the parties have consented to our review. An

order resolving a motion for postpetition interest, attorneys' fees, and costs is final for

purposes of appellate jurisdiction.[13]

A bankruptcy court's award of postpetition interest, attorneys' fees, and costs

under § 506(b) involves statutory interpretation invoking *de novo* review as are the

court's conclusions concerning the allowance of such fees and costs as part of the secured

---

[11]    *Notice of Appeal*, *in* Appellant's App. at 406.
[12]    *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).
[13]    *In re Hatcher*, 208 B.R. 959, 963 (10th Cir. BAP 1997), *aff'd sub nom. Wade v. Hatcher*, 133 F.2d 932 (10th Cir. 1998) (citing case defining a final order); *In re SW Boston Hotel Venture, LLC*, 479 B.R. 210, 219 (1st Cir. BAP 2012), *vacated on other grounds*, 748 F.2d 393 (1st Cir. 2014) (citing *Fin. Sec. Assur. Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790 (5th Cir. 1997).

claim.[14] "*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[15]

The determination that attorneys' fees and costs are reasonable "will not be disturbed on appeal absent an abuse of discretion or erroneous application of the law."[16] "The setting of a reasonable hourly rate is within the [trial] court's discretion."[17] A trial court "abuses its discretion when it (1) fails to exercise meaningful discretion . . . , (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings."[18] Abuse of discretion also occurs when a "decision is arbitrary, capricious or whimsical or results in a manifestly unreasonable judgment."[19] "As one court has put it, '[t]he question is not how the reviewing court would have ruled, but rather whether a reasonable person could

---

[14]     *In re Sun 'N Fun Waterpark LLC*, 408 B.R. 361, 366 (10th Cir. BAP 2009) (first citing *In re Gledhill*, 164 F.3d 1338, 1340 (10th Cir. 1999), and then citing *Kittel v. First Union Nat'l Bank (In re Kittel)*, 285 B.R. 344, 2002 WL 924619, at *5 (10th Cir. BAP May 8, 2002) (unpublished)).
[15]     *Peters v. Clark (In re Bryan)*, 857 F.3d 1078, 1091 (10th Cir. 2017) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).
[16]     *In re Albrecht*, 245 B.R. 666, 669 (10th Cir. BAP 2000), *aff'd*, 233 F.3d 1258 (10th Cir. 2000) (citing *Gray v. English*, 30 F.3d 1319, 1321 (10th Cir. 1994)).
[17]     *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (citing *Carter v. Sedgwick Cty.*, 36 F.3d 952, 956 (10th Cir. 1994)).
[18]     *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015) (citing *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 764 (10th Cir. 2010)).
[19]     *Lang v. Lang (In re Lang)*, 305 B.R. 905, 908 (10th Cir. 2004), *aff'd*, 414 F.3d 1191 (10th Cir. 2005) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1994)).

agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.'"[20]

## III. Discussion

### a. Procedural Matter: Motion to Strike

The Debtor requests that the Court strike the second legal argument contained in the Bank's appellate brief.[21] The Bank's brief asserts the Bankruptcy Court entered a final order overruling the Debtor's objection to Claim 8 and, therefore, the doctrine of *res judicata* precludes this Court from reviewing the enforceability of the Variable Rate Notes. We begin by noting the term *res judicata* is no longer favored by the Tenth Circuit Court of Appeals, which instead prefers the term claim preclusion.[22] Regardless we read the Bank's *res judicata* argument as referring to the doctrine of claim preclusion.[23]

The doctrine of claim preclusion

> "prevent[s] a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." For claim preclusion to apply, "three elements must exist: (1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." [24]

---

[20]     *Id.* (quoting *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 608 (6th Cir. 2000)).

[21]     *Motion to Strike Portion of Amended Appellee's Brief*, BAP ECF No. 33.

[22]     *Johnson v. Spencer*, 950 F.3d 680, 693 n.3 (10th Cir. 2020) (quoting *Wilkes v. Wyo. Dep't of Emp't*, 314 F.3d 501, 504 n.1 (10th Cir. 2002)).

[23]     *See Park Lake Res. L.L.C. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1135-36 (10th Cir. 2004) (first citing *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 n.5 (1998), and then citing 18 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper Fed. Pract. & Proc. § 4402 at 7 (2d 3d. 2002)) ("*Res judicata* doctrine encompasses two distinct barriers to repeat litigation: claim preclusion and issue preclusion.").

[24]     *Johnson*, 950 F.3d at 693 (internal citation omitted) (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017)).

Under claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."[25] The doctrine applies to claims

> that could have been raised and decided in a prior action—even if they were not actually litigated. If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."[26]

The Bank argues the Bankruptcy Court's order overruling the Debtor's objection to Claim 8 is a final judgment deciding the validity of its claim on the merits. Therefore, the Bank argues the order overruling the objection to claim precludes this Court's review of the enforceability of the Variable Rate Notes. The Debtor counters, arguing the order overruling the objection to Claim 8 is not a final order and that subsequent Bankruptcy Court orders clarified that in denying the objection to Claim 8, the Bankruptcy Court did not decide the issue of variable interest rates and the validity of the Variable Rate Notes.

### i. The Order on the Objection to Claim 8 is a Final Order

The Supreme Court has held that a decision is considered "final" for purposes of 28 U.S.C. § 158 if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[27] "Orders in bankruptcy cases qualify as 'final' when they

---

[25] *Montana v. United States*, 440 U.S. 147, 153 (1979).
[26] *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S.Ct. 1589, 1594 (2020) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).
[27] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233(1945)).

9

definitively dispose of discrete disputes within the overarching bankruptcy case."[28] In the bankruptcy context, it is well-established that "[a]n order on an objection to a claim is a final order for purposes of 28 U.S.C. §158(a)(1)."[29] Finality is the first requirement for finding claim preclusion as "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were *or could have been raised* in that action."[30] "Stated alternatively . . . a final judgment on the merits bars further claims by  parties or their privies based on the same cause of action."[31]

In this case, the order at issue is the Bankruptcy Court's order denying the Debtor's objection to Claim 8. The Bankruptcy Court's *Minutes of Proceedings* filed June 28, 2019 constitute an order overruling the Debtor's objection to Claim 8 as stated on the record. The Debtor argues the Bankruptcy Court has not issued a final order on the objection to Claim 8 because it did not rule on grounds the Debtor asserted in its Supplement to Objection to Claim 8 filed June 26, 2019, one day prior to the hearing on the objection. However, on its face the order overruling the objection appears to be a final order. The order recites that the Bankruptcy Court held a hearing on June 27, 2019 on "Debtor's

---

[28]     *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard* v. *Blue Hills Bank*, 575 U.S. 496, 501 (2015)).

[29] *Allen v. Geneva Steel Co. (In re Geneva Steel Co.),* 260 B.R. 517, 520 (10th Cir. BAP 2001), *aff'd*, 281 F.3d 1173 (10th Cir. 2002) (citing *Garner v. Shier (In re Garner),* 246 B.R. 617, 619 (9th Cir. BAP 2000)); *Wilson v. Broadband Wireless Int'l Corp.,* 295 B.R. 140, 143 (10th Cir. BAP 2003); *In re Egbune,* No. CO-16-006, 2016 WL 6996129 (10th Cir. BAP Nov. 30, 2016) (unpublished).

[30]     *Allen v. McCurry*, 449 U.S. 90, 94(1980) (emphasis added).

[31]     *May v. Parker-Abbott Transfer and Storage, Inc*., 899 F.2d 1007, 1009 (10th Cir. 1990) (quoting *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988) (quoting *Brown v. Felsen,* 442 U.S. 127, 131(1979)).

Objection to Claim No. 8 (ECF No. 521)" and on "Debtor's addendum to supplement (ECF No. 555)"[32] (which is the Supplement to Objection to Claim 8). The order overrules the objections without any qualification or limitation. The Debtor has failed to provide this Court with a copy of a transcript of the hearing on the objection to Claim 8 preventing review of the Bankruptcy Court's detailed ruling. [33] The Bankruptcy Court allowed the Bank's claim, including prepetition interest. The Debtor did not appeal the claim allowance order and the time to do so has passed. Accordingly, the order allowing Claim 8 is final.

### ii. The Debtor is Precluded from Objecting to the Enforceability of the Variable Rate Notes

The Debtor's appellate briefing argues the Bank's § 506(b) claim is improper because the Variable Rate Notes supporting the § 506(b) claim are unenforceable as (1) the interest rates are an essential term of the Variable Rate Notes; (2) there was no meeting of the minds that the Bank's index rate is incorporated in the Variable Rate Notes or how often or when rates will change or by how much and (3) the Bank may change the interest rates at its "whim and will."[34] As such, the premise of the Debtor's argument is the unenforceability of the writing on which Claim 8 is based, and that the Bank's claim therefore should have been disallowed. Section 502(b)(1) provides a debtor may object to

---

[32]     *Minutes of Proceeding*, *in* Appellee's App. at 1.
[33]     *See* Fed. R. Bankr. P. 8009(b)(1) (stating it is the appellant's duty to order a transcript of proceeding); 10th Cir. BAP LR 8009-3 ("When the party asserting an issue fails to provide a record sufficient for considering that issue, this Court may decline to consider it.").
[34]     Appellant's Br. 12.

a claim filed on the basis that "such claim is unenforceable against the debtor and property

of the debtor."[35]

After determining the *Minutes of Proceeding* and order constitutes a final order on

the objection to Claim 8, the first element of claim preclusion is met. The Debtor does not

challenge the second element of claim preclusion, privity of the parties, as the objection to

Claim 8 and the objection to the Motion both involve the Debtor and the Bank. Therefore,

the only remaining issue is whether there is identity of the causes of action. In *May v.*

*Parker-Abbott Transfer and Storage, Inc.*, the Tenth Circuit discussed what constitutes a

single "cause of action" for purposes of claim preclusion:

> In order to determine what constitutes a single "cause of action" in any
> given case, this circuit applies the transactional approach of the
> *Restatement (Second) of Judgments* §24 (1982):
>
> "(1) When a valid and final judgment rendered in an action extinguishes
> the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18,
> 19), the claim extinguished includes all rights of the plaintiff to
> remedies against the defendant with respect to all or any part of the
> transaction, or series of connected transactions, out of which the action
> arose.
>
> (2) What factual grouping constitutes a 'transaction', and what
> groupings constitute a 'series', ought to be determined pragmatically,
> giving weight to such considerations as whether the facts are related in
> time, space, origin, or motivation, whether they form a convenient trial
> unit, and whether the treatment as a unit conforms to the party's
> expectations or business understanding or usage."
>
> Quoted in *Petromanagement*, 825 F.2d at 1335. Under this approach, this
> circuit also recognizes that "a 'contract' is generally considered to be a
> 'transaction,' so that all claims of contractual breach not brought in an
> original action would be subject to a bar of claim preclusion, so long as the
> breaches antedated the original action." *Petromanagement*, 835 F.2d at

---

[35]     11 U.S.C. § 502(b)(1).

1336 (citing *Restatement of Judgments §62* and h, at 250 ('All the breaches of a contract prior to the commencement of the suit are treated as a single cause of action.')).[36]

Applying this standard, any challenges to the enforceability of the Variable Rate Notes should have been raised in the Debtor's objection to Claim 8. Adjudicating the objection to Claim 8 and the Motion pragmatically would require the Bankruptcy Court to consider the same series of facts and transactions to determine the enforceability of the Variable Rate Notes. Furthermore, the requirement of finality in the claims allowance process requires that once a claim is allowed, it cannot subsequently be disallowed by declaring the contract upon which the claim is based unenforceable.

In the present case, whether the Debtor specifically raised the note enforceability issue in its objection to Claim 8 or the Bankruptcy Court ruled on that issue is not determinative of whether the Debtor is barred from raising that issue in this appeal. What is relevant is that the Debtor could have raised the issue in its objection to Claim 8, regardless of whether it did so. The Debtor's objection was denied, Claim 8 was allowed, the order allowing the Claim 8 was a final order, the order was not timely appealed, and the Debtor is barred under the rules of claim preclusion from litigating note unenforceability in this appeal. The order overruling the objection to Claim 8 is a final

---

[36] *Parker-Abbott Transfer and Storage, Inc.*, 899 F.2d at 1009-10.

order carrying preclusive effect to challenges to Claim 8. Therefore, the Debtor's motion to strike is DENIED.

### b. Award of Postpetition Interest

As the issue of whether the Variable Rate Notes are enforceable is not properly before this Court because the Debtor did not appeal the order overruling the objection to Claim 8, we turn to the Bankruptcy Court's award of postpetition interest in the amount of $377,097.31. The relevant Bankruptcy Code section is § 506(b), which provides, "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim."[37] The Supreme Court interprets § 506(b) as authorizing the holder of an allowed oversecured claim to receive postpetition interest.[38] When a claim is based on a consensual lien—a lien provided for under a contract signed by the parties—the majority of courts conclude "that postpetition interest should be computed at the rate provided in the agreement, or other applicable law, under which the claim arose—the so-called 'contract rate' of interest."[39]

The Debtor does not take issue with the Bankruptcy Court's conclusion that the Bank is entitled to postpetition interest pursuant to § 506(b) as an oversecured creditor. Nor does the Debtor appear to assert the Bankruptcy Court erred in awarding postpetition interest on the Bank's two claims evidenced by fixed-rate promissory notes. Instead, the

---

[37]    11 U.S.C. § 506(b).
[38]    *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-42 (1989).
[39]    4 Collier on Bankruptcy ¶ 506.04[b][i] (Richard Levin & Henry J. Sommer eds.,16th ed. 2020).

Debtor argues it is impossible to determine the interest rates of the Variable Rate Notes. The Variable Rate Notes reference the Index, which provides a base interest rate used to determine the Debtor's variable interest rates. The Bankruptcy Court concluded the Variable Rate Notes incorporated the Index by reference. The Debtor argues this conclusion is erroneous. Accordingly, our review is limited to the Bankruptcy Court's application of the interest rates contained in the Variable Rate Notes.

The Variable Rate Notes provide the laws of Iowa govern enforceability. The Iowa Supreme Court states, "[t]he cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract."[40] Contract formation requires parties to "express mutual assent to the terms of the contract. Mutual assent is present when it is clear from the objective evidence that there has been a meeting of the minds."[41] "To meet this standard, the contract terms must be sufficiently definite for the court to determine the duty of each party and the conditions of performance."[42]

When interpreting a contract, Iowa courts "look both to the terms of the contract as well as to any documents included by reference."[43] "Under the doctrine of incorporation, one document becomes part of another separate document simply by

---

[40]     *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008) (citing *Walsh v. Nelson*, 622 N.W.2d. 499, 503 (Iowa 2001)).

[41]     *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) (quoting *Schaer v. Webster Cty.*, 644 N.W.2d 327, 338 (Iowa 2002)).

[42]     *Id.* (citing *Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 346 (Iowa 1999)).

[43]     *Hofmeyer v. Iowa Dist. Ct. for Fayette Cty.*, 640 N.W.2d 225, 228 (Iowa 2001).

reference as if the former is fully set out in the latter."[44] "The doctrine of incorporation requires the contract to make a clear and specific reference to an extrinsic document to incorporate the document into the contract."[45] A party to a contract has "a duty of inquiry to discover the document incorporated by reference."[46] Whether a contract incorporates extrinsic material presents a question of law.[47]

The Variable Rate Notes provide:

The Interest Rate may change during the term of this transaction.

(1) Index. Beginning with the first Change date, the Interest rate will be based on the following index: ROLLING HILLS BANK & TRUST BASE RATE 2010.
The Current Index is the most recent figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar Index. You will give me notice of your choice.

(2) Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change December 18, 2014 and daily thereafter.

(3) Calculation of Change. On each Change Date you will calculate the Interest Rate, which will be the Current Index minus 2.36 percent.[48] Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate

---

[44]     *Id.* (citing 4 Richard A. Lowd, *Williston on Contracts* § 628 (3d ed. 1961)).
[45]     *Longfellow v. Sayler*, 737 N.W.2d 148, 154 (Iowa 2007) (citations omitted); *Hofmeyer v. Iowa Dist. Ct. for Fayette Cty.*, 640 N.W.2d at 228-29 (citing *In re Estate of Kokjohn*, 531 N.W.2d 99, 101 (Iowa 1995)).
[46]     *Id.* at 229.
[47]     *Id.* at 228 (citing 11 Richard A. Lord, *Williston on Contracts* § 30:25 (4th ed. 1999)).
[48]     The two additional Variable Rate Notes provide that the rate is the Index minus 1.85%.

and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) Effect of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.[49]

After reviewing these terms, the Bankruptcy Court concluded the Variable Rate Notes incorporated the Index by reference.

Applying *de novo* review, we agree with the Bankruptcy Court. The express terms of the Variable Rate Notes refer to the "ROLLING HILLS BANK & TRUST BASE RATE 2010" index.[50] Although the Variable Rate Notes do not define the Rolling Hills Bank & Trust Base Rate index, the reference is specific enough to allow a party to the contract to inquire as to the Index. Upon inquiry, the Bank will either provide the Index or a substituted index. This scenario is no different than if the Variable Rate Notes referenced any other commercially available index requiring the Debtors to look to an extraneous document to ascertain the applicable interest rate. Accordingly, the applicable interest rates are those derived from the Index, as incorporated by reference into the Variable Rate Notes.

The Debtor also argues it is impossible to determine the date upon which the interest rate may change, making it impossible to determine the interest rate. However, each of the Variable Rate Notes provides a date upon which the interest rate will change

---

[49] *Promissory Note* at 1, *in* Appellant's App. at 7. This provision of the three Variable Rate Notes is identical.
[50] *Id.*, *in* Appellant's App. at 7.

and states the interest rate may change daily thereafter.[51] The Index lists the daily interest rate and identifies the days on which the interest rate changed. For the period the Bank seeks postpetition interest, the Index rates changed four times.[52] While determining the interest rate under the Variable Rate Notes requires additional steps beyond merely looking at the notes themselves, the determination is not impossible.

Furthermore, the Bankruptcy Court found that the Debtor's president, Jack Twiford, is sophisticated in business matters. We agree with the Bankruptcy Court's conclusion that Mr. Twiford was duty-bound to read a contract carefully before executing it on behalf of the Debtor. The terms of the Variable Rate Notes provide, at the very minimum, inquiry notice that the interest rate can and will change based on changes to the Index. Reference to the Index is sufficiently clear and specific enough for a reasonably sophisticated businessperson such as Mr. Twiford to inquire about the applicable interest

---

[51] The December 17, 2014 promissory note provides the interest rate will change on December 18, 2014 and daily thereafter. *Promissory Note* at 1, *in* Appellant's App. at 7. The June 3, 2016 promissory note provides the interest rate will change on June 4, 2015 and daily thereafter. *Promissory Note* at 8, *in* Appellant's App. at 10. The March 13, 2017 promissory note provides the interest rate will change on March 14, 2017 and daily thereafter. *Promissory Note* at 18, *in* Appellant's App. at 20.

[52] *Affidavit of Darrell Hockenberry in Support of Motion of Rolling Hills Bank and Trust to Allow Claim for Postpetition Interest, Fees, and Costs Pursuant to 11 U.S.C. § 506(b)* at 2, *in* Appellant's App. at 376.

rates. Accordingly, the Bankruptcy Court did not err in awarding postpetition interest pursuant to § 506(b).

### c. Award of Postpetition Attorneys' Fees and Costs

Section 506(b) also provides that the holder of an allowed secured claim that "is secured by property the value of which . . . is greater than the amount of such claim, . . . shall be allowed . . . any reasonable fees, costs, or charges provided for under the agreement."[53] This section of the Bankruptcy Code allows "creditors having oversecured consensual claims [to] recover attorney fees, costs or other charges under § 506(b)."[54]

This Court has previously held

> § 506(b) can be broken down into four basic requirements for the allowance of attorney's fees, costs, and charges to a secured creditor: (1) the claim must be an allowed secured claim; (2) the creditor holding the claim must be over-secured; (3) the entitlement to fees, costs, or charges must be provided for under the agreement or state statute under which the claim arose; and (4) the fees, costs and charges sought must be reasonable in amount.[55]

The Debtor only assigns error to the Bankruptcy Court's determination that the fees awarded were reasonable. The Debtor contends the Bankruptcy Court erred in failing to reduce the billing rates charged by the Bank's attorneys "to reflect the rates charged in Wyoming."[56]

---

[53]     11 U.S.C. § 506(b).
[54]     *In re Gledhill*, 164 F.3d 1338, 1342 (10th Cir. 1999).
[55]     *In re Sun 'N Fun Waterpark, LLC*, 408 B.R. 361, 366 (10th Cir. BAP 2009) (first citing *In re Astle*, 364 B.R. 735, 741 (Bankr. D. Idaho 2007), and then citing *In re Kord Enters. II*, 139 F.3d 684, 689 (9th Cir. 1998)).
[56]     Appellant's Br. 12.

A bankruptcy court's decision on the reasonableness of requested fees, particularly the reasonableness of hourly billing rates, falls within the court's discretion.[57] The Tenth Circuit provides, "[a] reasonable rate is the prevailing market rate in the relevant community."[58] Bankruptcy courts from other jurisdictions considering the issue hold "the facts of the case will dictate the appropriate view of community for the purposes of determining the prevailing rate."[59] In many cases, the relevant community may be one other than the community in which the court sits because courts are reluctant to deprive bankruptcy participants their choice of counsel.[60] For this reason, a judge "may consider

---

[57]    *Lippoldt v. Cole*, 468 F.3d 1204, 1224-25 (10th Cir. 2006) (explaining trial court may stray from prevailing market rate where litigation is unusual and requires special skills).

[58]    *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1998) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

[59]    *In re C-N-D Indus., Inc.*, No. 10-62363, 2011 WL 2263794, at *3 (Bankr. N.D. Ohio June 6, 2011) (citing *Zolfo, Cooper & Co. v. Sunbeam–Oster Co.,*50 F.3d 253 (3d Cir.1995)); *In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 874–75 (Bankr. W.D. Tex. 2008) (an otherwise local case in terms of employees or business operation may be a regional case in terms of its lenders); *In re Temple Ret. Cmty., Inc.*, 97 B.R. 333, 342–43 (Bankr. W.D. Tex. 1989) (higher than local hourly rates may be reasonable when the circumstances of the case justify bringing in counsel outside the local community); *In re Computer Learning Ctrs, Inc.*, 285 B.R. 191, 228 (Bankr. E.D. Va. 2002) (holding in many "circumstances, geography may not be as significant a factor. The relevant market consists of those attorneys who regularly practice before the court in a case like the one before the court.").

[60]    *In re Pan Am. Gen. Hosp., LLC*, 385 B.R. at 874 ("Courts should exercise some care before denying a given player their chosen choice of counsel based solely on the location (and billing rate) of the lawyer, and imposing local rates can have just that effect.").

his or her 'own knowledge of prevailing market rates as well as other indicia of a

reasonable market rate.'"[61]

The Bankruptcy Court's approval of the requested attorneys' fees relied on its

prior opinion in *In re Hout Fencing of Wyoming, Inc.*[62] In *Hout Fencing*, the Bankruptcy

Court approved fees at an hourly rate of $550 per hour, concluding reasonable rates are

the rates supported by the market in which counsel customarily practices. The Debtor

argues the Bankruptcy Court's deviation from the relevant community standard was an

abuse of discretion. The Debtor relies on the Tenth Circuit's *Smith v. Freeman*,[63] and

other cases from outside the Tenth Circuit to argue the prevailing rates are those billed by

counsel in Wyoming. However, we note

> the Tenth Circuit has not held that the relevant community is limited to a
> specific metropolitan area where the case is designated for trial. The Tenth
> Circuit has discussed rates from particular metropolitan areas, but those
> cases generally involved determinations about the prevailing market rate in
> the undisputedly relevant metropolitan area.[64]

Furthermore, *Smith* states, "[t]he establishment of hourly rates in awarding attorneys'

fees is within the discretion of the trial judge who is familiar with the case and the

prevailing rates in the area."[65] Accordingly, the Debtor's reading of Tenth Circuit

---

[61]    *Lippoldt* , 468 F.3d at 1225 (quoting *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994)).
[62]    Order at 8-9, *in* Appellant's App. at 401-02 (citing *In re Hout Fencing of Wyo., Inc.*, No. 18-20423, ECF No. 129 at 3 (Bankr. D. Wyo. July 23, 2019) (unpublished)).
[63]    921 F.2d 1120 (10th Cir. 1990).
[64]    *Pipeline Prods., Inc. v. Madison Cos.*, No.15-4890-KHV, 2019 WL 3252743, at *4 (D. Kan. July 19, 2019) (internal citations omitted) (unpublished).
[65]    *Id.* at 1122 (quoting *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987)).

21

authority is overly restrictive and would unduly limit the Bankruptcy Court's discretion in determining the applicable relevant community when considering fee applications.

Even if we were to hold the Bankruptcy Court erred by improperly determining the relevant community,[66] it is harmless error. The Debtor appears to assert $325 per hour is the prevailing rate.[67] The billing rates of the six attorneys for the Bank involved in the case range from $255 per hour to $490 per hour. The two attorneys billing the most hours in the case billed at rates of $310 and $365 per hour.[68] Dividing the total fees charged for work performed by the Bank's attorneys by the total number of hours billed by those attorneys yields a blended average hourly rate of $324.79. The Bank's counsel has offices located in Denver, Colorado and Cheyanne, Wyoming. The Debtor's counsel is located in Casper, Wyoming. The Bankruptcy Court approved the Debtor's counsel's compensation at a rate of $300 per hour,[69] which the Debtor has admitted is a reasonable hourly rate in

---

[66] The Bankruptcy Court determined that the reasonableness of hourly rates should be measured by prevailing rates in the location where attorneys customarily practice.

[67] Appellant's Br. 13 (citing *Response to Bank's Reply to Objection to § 506(b) Claim* at 3, ¶5, *in* Appellant's App. at 381). We note the Bank's counsel appears to have an office in Cheyanne, Wyoming, as the Motion and the Appellee's Brief are signed by counsel with a Wyoming address.

[68] *Cover Sheet to Rolling Hills Bank and Trust's Motion to Allow Claim for Post-Petition Interest, Fees and Costs Pursuant to 11 U.S.C. § 506(b)* at 2, *in* Appellant's App. at 212 (requesting fees for Bradley T. Hunsicker at $310 per hour for 496.4 hours and Donald D. Allen at $365 per hour for 323.8 hours. The remaining four attorneys billed for 107.2 hours total, 91 of which were billed at $255 per hour.).

[69] *Application for Approval of Professional Compensation*, Case No. 18-20120, Bankr. ECF No. 533. *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("Although we are not obliged to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *Bank of Commerce & Tr.*

22

this case. The Bankruptcy Court approved a blended average hourly billing rate only slightly above that of the Debtor's Wyoming counsel. Accordingly, the approved hourly billing rates met "the prevailing market rate in the relevant community"[70] standard even if the prevailing market for determining the reasonableness of hourly rates is the State of Wyoming. Therefore, the Bankruptcy Court's determination that the requested hourly billing rates were reasonable is not "arbitrary, capricious or whimsical" and does not "result[] in a manifestly unreasonable judgment."[71] As such, the Bankruptcy Court did not abuse its discretion in approving the postpetition attorneys' fees.

## IV. Conclusion

Section 506(b) authorizes the award of postpetition interest and attorneys' fees to an oversecured creditor. Where an agreement between the parties provides a rate of interest, postpetition interest shall accrue at the contracted for rate. The Variable Rate Notes clearly reference the Index such that a reasonable person entering into the agreements would understand the applicable interest rate will be derived from the Index on any given date. As such, the Bankruptcy Court did not err in awarding the Bank postpetition interest based on the contracted for interest rates. Furthermore, the Bankruptcy Court approved hourly rates the Bank's attorneys charged that were comparable to the approved rates for the Debtor's Wyoming bankruptcy counsel.

---

*Co. v. Schupbach* (*In re Schupbach)*, 607 F. App'x 831, 838 (10th Cir. 2015) (citing *Ahidley*, 486 F.3d at 1192 n.5).

[70] *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1998) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

[71] *Lang v. Lang (In re Lang)*, 305 B.R. 905, 908 (10th Cir. 2004) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1994)).

23

Accordingly, the Bankruptcy Court did not abuse its discretion in awarding the Bank's

postpetition attorneys' fees. As we find no error, we AFFIRM the Bankruptcy Court's

order granting the Motion